**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

**B&P Company, Inc.**,

       *Plaintiff*,

v.

**TLK Fusion Entertainment, LLC,** *et al.*,

       *Defendants*.

Case No. 3:11-cv-276
**Judge Thomas M. Rose**

---

**ENTRY AND ORDER DENYING MOTION OF DEFENDANT TLK FUSION ENTERTAINMENT, LLC TO DISMISS, OR IN THE ALTERNATIVE, TO TRANSFER THIS CASE TO THE CENTRAL DISTRICT OF CALIFORNIA,** (DOC. 10), **AND DENYING MOTION OF KRIS JENNER COMMUNICATIONS, INC., AND KRIS JENNER TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION, PURSUANT TO FED. R. CIV. P. 12(B)(6), OR IN THE ALTERNATIVE FOR TRANSFER TO THE CENTRAL DISTRICT OF CALIFORNIA,** (DOC. 12), **AND ORDERING TLK FUSION ENTERTAINMENT, LLC TO DECLARE ITS MEMBERS AND THEIR PLACES OF RESIDENCE.**

---

Plaintiff B&P Company has filed a complaint seeking rescission of contract, fraud and deceit, breach of contract, breach of covenant of good faith and fair dealing, recision pursuant to California Civil Code § 1689, and unjust enrichment. Doc. 1. Defendants have filed motions requesting the Court to either dismiss Plaintiff's complaint for lack of personal jurisdiction or to transfer the case to the Central District of California pursuant to Federal Rule of Civil Procedure 12(b). Because Defendants have contractually stipulated to the jurisdiction of this Court and because venue here is not unreasonable, the Court will deny the motions.

**I.      Background**

Plaintiff, B&P Company, an Ohio company with its principal place of business in Montgomery County, Ohio, has produced anti-aging products since 1889. (Doc. 1, ¶ 5; Doc. 15-1, ¶ 3). B&P manufactures and sells a product line known as "Frownies," which includes non-surgical skin treatments that claim to enhance skin naturally and safely by reducing and removing signs of aging, without pain, invasiveness, or expense associated with a facelift. (Doc. 15-1, ¶ 4).

On June 2 & 3, 2010, Defendant TLK Fusion Entertainment, L.L.C., a marketing and public relations firm, contacted B&P in Ohio to explore working with B&P to promote Frownies. (Doc. 15-1, ¶¶ 5-6). A June 3, 2010 email from TLK states in part:

> My name is Erika Aukland and I am the Business Development Manager at TLK Fusion. I am following up on my voice mail I left yesterday. I wanted to speak with you regarding a possible alignment of Frownies products with our company. We work directly with numerous celebrities and would like to speak with you about some of the opportunities we currently have. We are familiar with your product and think it would be a great fit for some of the strategic alignments that we do.

(Doc. 15-1, ¶¶ 5-8, and 15-2).

During the ensuing months, TLK called B&P representatives in Ohio more than 100 times, emailed B&P representatives in Ohio more than 100 times, and sent several facsimiles to B&P representatives in Ohio at both the company headquarters and their personal residences.

B&P and TLK discussed having one of TLK's celebrities promote Frownies. By January 2011, TLK proposed that B&P use Defendant Kristen Jenner to promote Frownies. (Doc. 15-1, ¶¶ 10-11 and Ex. 2 attached to Declaration). TLK's proposal included a one-year agreement that included Jenner endorsing Frownies, participating in a national media tour to promote the product, arranging to have the product sold in mass retail stores in the United States, and promoting the

product on various national television talk shows (*e.g.* "The View", "Rachel Ray", the "Today Show") and the on-line and on-television retailer QVC. (*Id.* at ¶ 12).

Negotiations between B&P and TLK over the use of Jenner as a celebrity endorser and promoter continued throughout January and into February 2011. (Doc. 15-1, ¶ 11). During the negotiations, TLK is alleged to have served as Jenner's representative and agent. In a January 18, 2011 email to B&P, TLK explained Jenner's compensation demands:

> We spoke with Kris [Jenner] and as much as she appreciated the offer for 150k plus 15 percent, she is requiring the original negotiated amount. She is excited to move forward and totally backs the product. Would you like to offer 2 percent of[] sales over a certain amount sold this year in addition to her requested amount ... Total package, 395k."

(Doc. 15-1, ¶ 11, and Ex. 3 attached to Declaration).

By January 21, 2011, TLK sent a draft proposed agreement outlining a year-long "endorsement deal with Kris Jenner, Media Tour, Alignment with QVC, Target and others" that envisioned Jenner promoting the product on various national television talk shows. (Doc. 15-1, ¶ 12 and doc. 15-5). This initial draft included a forum selection clause whereby the parties would have stipulated to jurisdiction in the courts of the county of Los Angeles, California to resolve any disputes. (*Id.*)

Over the next few weeks, B&P and TLK, with the aid of their respective attorneys, further negotiated the agreement, including revisions to the choice-of-forum provision. (Doc. 15-1, ¶ 13 and Doc. 15-6).

All of the negotiations on behalf of Kris Jenner and Defendant Jenner Communications[1] were conducted by TLK. Kris Jenner claims to have had only two direct contacts with B&P, one being a telephone call where they discussed their thoughts concerning skin care, another during Kris Jenner's promotion activities in California. *Id.* at ¶10.

Both parties affy that negotiations took place in their home state, asserting that that is the only place where negotiations took place, meaning that, in reality, these negotiations were of an interstate variety. These negotiations culminated in B&P and TLK signing an agreement on February 7, 2011. (Doc. 1, Ex. A; Doc. 15-1, ¶ 15). The B&P-TLK Agreement was for a period of one year, ending on March 1, 2012, (Doc. 1-1, ¶ 4.2), and included a forum selection clause:

> [v]enue for any dispute arising out of or relating to this Agreement shall be exclusively in the courts of the County of Los Angeles, except that in the event of a breach of this Agreement, the non-breaching Party may bring a lawsuit in its home County and the breaching Party consents to jurisdiction in that venue subject to the jurisdictional limits under applicable Federal law.

(Doc. 1-1, ¶ 15).

While the B&P-TLK Agreement was "entered into by and between on the one hand TLK Fusion Entertainment, LLC,...and on the other hand B&P, Inc.," it describes terms and conditions of a commission to be paid by B&P on Frownies sales according to "a simultaneously executed side letter" ... "between Jenner Communications, Inc., and Frownies [B&P] to be facilitated by TLK." Doc. 1-1, at 2, ¶ 3.5.

---

[1] Jenner Communications is alleged to be owned by Bruce Jenner and Kristen Jenner and to be a production company that exists primarily for the purpose of entering into agreements on behalf of and for the benefit of Kristen Jenner and Bruce Jenner.

The side letter between Jenner Communications, Inc., and B&P does not appear to contain a venue clause of its own. See Doc. 24-1, at 8-9. The side letter is attached, however, to a contract between TLK and Jenner Communications that does contain a venue clause of its own, one that stipulates that "Venue for any dispute arising out of or relating to this Agreement shall be exclusively in the Courts of the County of Los Angeles." Doc. 24-1 at 6 ¶ 15. There is, however, no dispute currently between TLK and Jenner Communications.

Jenner Communications, Jenner and B&P signed a side letter that consisted of three sections, with two separate signature lines: one after the first two sections and one after the third section. The side letter also contained the following subscription:

> Jencom and Frownies
> Sideletter Agreement
> In the Matter of the Frownies Endorsement Deal

Doc. 24-1, at 8-9. See also Doc. 1-1, ¶ 3.5; doc. 1-2.

In the B&P-TLK agreement, TLK warrants to B&P that Jenner is not promoting products in direct competition with B&P's product. In the side letter, Jenner Communications and Kristen Jenner allegedly join into this warrant. See doc. 24-1 at 9.

B&P alleges that Jenner underwent a facelift in June 2011, and publicly endorsed her facelift on her television show "Keeping up with the Kardashians," and on other television talk shows and in magazines across the country. (Doc. 1, ¶ 41). Jenner is also alleged to have tweeted about her facelift, advertised it on her website for "Keeping up with the Kardashians," and to have given interviews about her facelift that were posted on the internet.

On August 2, 2011, B&P filed suit in this Court against TLK, Jenner and Jenner Communications. B&P alleges that TLK breached various provisions of their agreement, including agreements that:

> TLK would cause Jenner to endorse and align with FROWNIES;
>
> TLK would cause Jenner to be available to perform all services designated in the Agreement upon reasonable notice.

(Doc. 1-1, ¶¶ 4.1, 4.2)

> [Jenner] is not promoting and has not granted nor will [Jenner] grant to any other party any right, permission, or license to use her likeness or endorsement in connection with the advertisement, sale, or promotion of products that are identical in claimed benefit as marketed to the consumer by FROWNIES, or directly competitive with the FROWNIES DPL;

(Doc. 1-1, ¶ 13.3) and that

Jenner "…is not and has not nor will [she]...engage during the Term of this Agreement in any activity that could potentially have a negative impact on [B&P] and [Jenner's] endorsement of [Frownies]" (Doc. 1-1, ¶ 13.5).

B&P alleges that once Jenner underwent a facelift and promoted the surgery, TLK, Jenner Communications and Jenner breached the Agreement because: 1) Jenner has not "endorse[d] and align[ed]" with Frownies; 2) Jenner has not performed the promotional and endorsement services under the Agreement; 3) Jenner is now promoting and endorsing the face lift, which B&P alleges is directly competitive with Frownies; and 4) Jenner's receiving and promoting the facelift has had a negative impact on B&P and Jenner's endorsement of Frownies. As such, B&P claims that Jenner has disqualified herself from credibly endorsing Frownies products.

TLK, Jenner and Jenner Communications have moved the Court to dismiss the case entirely or, in the alternative, transfer the case to California. Docs. 10, 12. Being in receipt of the parties responses, docs. 15, 16, and replies, docs. 19, 23, the Court considers the matter ripe for decision.

## II. Motions to Dismiss

### A. Legal Standard

When confronted with a Rule 12(b)(2) motion, "[t]he plaintiff bears the burden of establishing the existence of jurisdiction." *Estate of Thompson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360 (6th Cir. 2008) (citing *Brunner v. Hampson*, 441 F.3d 457, 462 (6th Cir. 2006)). When the Court resolves a Rule 12(b)(2) based on "written submission and affidavits ... rather than resolving the motion after an evidentiary hearing or limited discovery, the burden on the plaintiff is 'relatively slight,'...and 'the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal.' " *Air Prod. and Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (quoting *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988)). Under such circumstances "the pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and the district court should not weigh 'the controverting assertions of the party seeking dismissal.'" *Id.* (quoting *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991)).

Although Plaintiff's *prima facie* burden is relatively slight, the Court must still find that "'[P]laintiff has set forth specific facts that support a finding of jurisdiction in order to deny the motion to dismiss.'" *Palnik v. Westlake Entm't, Inc.*, 344 Fed. Appx. 249, 251 (6th Cir. 2009) (quoting *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 (6th Cir. 2006)). Thus, "it remains the plaintiff's burden and the complaint must have 'established with reasonable particularity' those

specific facts that support jurisdiction." *Id.* (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). Consequently, the rules are designed in part to protect potential defendants from a "plaintiff's bald allegation of jurisdictional facts." *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).

The burden of establishing jurisdiction is on the plaintiff. *Welsh v. Gibbs*, 631 F.2d 436, 438 (6th Cir. 1980). If the district court determines to decide the issue solely on the basis of written materials, the plaintiff should be required only to make a *prima facie* case of jurisdiction, that is, he need only "demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss." *Id.* (quoting *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977)). However, if the district court concludes that the written submissions have raised issues of credibility or disputed issues of fact which require resolution, it may conduct a preliminary evidentiary hearing. *Id.*, at 438-39. Where this occurs the plaintiff must show by a preponderance of the evidence that jurisdiction exists. *Id.*

**B.     Analysis**

Plaintiff B&P Company alleges that this Court has personal jurisdiction over all Defendants by virtue of the contractual provisions outlined above concerning venue. TLK, Jenner and Jenner Communications all challenge this assertion, seeking to have the matter dismissed for lack of personal jurisdiction, or transferred to California. The Court will analyze TLK's motion on this point first.

**1.     Contractual Agreement to Jurisdiction - TLK**

TLK urges the Court to parse the forum selection clause into separate provisions, finding the second clause of it unenforceably vague, and the first part severable from the remainder such that it survives the demise of the second.

The forum selection clause in the B&P-TLK Agreement states:

> Venue for any dispute arising out of or relating to this Agreement shall be exclusively in the courts of the County of Los Angeles, except that in the event of a breach of this Agreement, the non-breaching Party may bring a lawsuit in its home County and the breaching Party consents to jurisdiction in that venue subject to the jurisdictional limits under applicable Federal law.

(Doc. 1, Ex. A, ¶ 15). TLK would have the Court disregard all that follows after the word "except."

As the parties point out, state law controls the interpretation of a forum selection clause in a diversity case where enforcement of the clause is necessary for the court to have personal jurisdiction over the defendant. *Preferred Capital Inc. v. Sarasota Kennel Club Inc.*, 489 F.3d 303, 308 (6th Cir. 2007). According to the B&P-TLK Agreement:

> The laws of the state of California shall govern the validity, construction and enforcement and interpretation of the Agreement.

(Doc. 1, Ex. A, ¶ 15).[2]

---

[2] Avoiding a legal labyrinth wherein

> "the Court must determine what law governs the interpretation of the forum selection clause. Here, federal law governs whether the forum selection clause is enforceable. *Compare Preferred Capital, Inc. v. Sarasota Kennel Club, Inc.,* 489 F.3d 303, 306 (6th Cir.2007) (holding that state law governs the enforceability of a forum selection clause in a diversity suit "when the clause is raised as the sole basis for personal jurisdiction over the defendant" [as is the case here]) *with Wong v. PartyGaming Ltd.,* 598 F.3d 821, 828 & n.6 (6th Cir.2009) (distinguishing *Preferred Capital* and holding that federal law governs the enforceability of a forum selection clause in a diversity suit in which the clause is not raised as the sole basis for personal jurisdiction over the defendant). But what about interpretation of the clause,

TLK asserts that the second half of the venue agreement is impermissibly vague, and that only the first portion of the forum selection clause should be enforced. Under California law:

> "forum selection clauses are valid and may be given effect, in the court's discretion and in the absence of a showing that enforcement of such a clause would be unreasonable." (*Smith, Valentino & Smith, Inc. v. Superior Court*, 551 P.2d 1206 (1976) ("courts possess discretion to decline to exercise jurisdiction in recognition of the parties' free and voluntary choice of a different forum"; policy favoring access to California courts by resident plaintiffs "is satisfied in those cases where ... a plaintiff has freely and voluntarily negotiated away his right to a California forum" (*id.,* 551 P.2d 1206)).)
>
> The burden of proof is on the plaintiff, and the factors involved in traditional forum *non conveniens* analysis do not control. (*Intershop Communications AG v. Superior Court*, 104 Cal. App. 4th 191, 198, 127 Cal. Rptr.2d 847 (2002)). "Instead, the forum selection clause is presumed valid and will be enforced unless the plaintiff shows that enforcement of the clause would be unreasonable under the circumstances of the case." ( *Ibid.*; see also *Furda*, supra, 161 Cal. App. 3d at pp. 424–25, 207 Cal. Rptr. 646 ["the existence of a contractual forum selection clause requires a court to decline jurisdiction under...section 410.30, absent a showing that enforcement would be unfair or unreasonable"].)

*Trident Labs, Inc. v. Merrill Lynch Commercial Finance Corp.*, 200 Cal. App. 4th 147, 153-54, 132 Cal. Rptr. 3d 551, 556 (Cal. App. 2011).

In support of their contention that the Court should disregard the second portion of the forum selection clause, TLK relies upon to the California Code provision that embodies the rule of contract interpretation known as *contra proferentum*, while at the same time advocating that the Court

---

> which is a "separate issue" from its enforceability? *Nw. Nat'l Ins. Co. v. Donovan,* 916 F.2d 372, 374 (7th Cir. 1990) (Posner, J.). The Sixth Circuit has not yet decided what law governs the interpretation question....
>
> *O & G Energy v. Rimkus Consulting Group*, 2011 WL 6153194, *2 (E.D. Ky. 2011).

enforce the first clause of the sentence containing the vague clause. TLK asserts that the provision is vague, as it would require a court trial to determine if a party were in breach of the agreement, and only then could a lawsuit be brought in the home county of the non-breaching party.

As TLK claims, California Civil Code § 1654 provides:

> In the case of an uncertainty not removed by the preceding rules [California Civil code sections 1635 to 1653], the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist.

Calif. Civ. Code § 1654.

Several of the California Civil Code Sections from 1635 to 1653, however, keep the Court from reaching this rule of interpretation, most prominently the one immediately preceding it:

> Repugnancy in a contract must be reconciled, if possible, by such an interpretation as will give some effect to the repugnant clauses, subordinate to the general intent and purpose of the whole contract.

Calif. Civ. Code § 1653. Additionally,

> [Cailf. Civ. Code, § 1654 is] to be used only when there is no extrinsic evidence available to aid in the interpretation of the contract or where the uncertainty cannot be remedied by other rules of interpretation. (*Decter v. Stevenson Properties, Inc.*, (1951) 39 Cal. 2d 407, 418, 247 P.2d 11; *Jacobs v. Freeman* (1980) 104 Cal. App. 3d 177, 189, 163 Cal. Rptr. 680.) The rule does not stand for the proposition that, in every case where one of the parties to a contract points out a possible ambiguity, the interpretation favored by the non-drafting party will prevail.

*Rainier Credit Co. v. Western Alliance Corp.*, 171 Cal. App. 3d 255, 263-64, 217 Cal. Rptr. 291, 295 (Cal. App. 1985). The Court finds the supposed ambiguity TLK points out implausible. The language clearly consents to venue for a alleged breach in the home county of the other party.[3]

---

[3] The result would be the same under federal law, where, too, the question of whether contractual terms are ambiguous is a question of law for the court. See *Tennessee Consol. Coal Co.*

**2.     Breadth of Forum Selection Clause**

TLK also asserts that, even if the forum selection clause gives this Court jurisdiction of B&P's claims for breach of contract, it should not be read as consenting to jurisdiction for the purpose of the claims of fraud in the formation of the contract. The Court notes that the forum selection clause does not by its terms limit itself to claims for breach of contract, as its terms state that the "Party consents to jurisdiction" in the home county of the non-breaching party "in the event of a breach."

Moreover, even if the forum selection clause did refer to claims arising under the contract, courts have not read such forum selection clauses narrowly. See *Terra Intern., Inc. v. Mississippi Chemical Corp.,* 119 F.3d 688, 693-94 (8th Cir. 1997). The Court will not read restrictions into the types of claims for which jurisdiction has been stipulated.

**B.     Contractual Provisions Regarding Jurisdiction - Jenner**

Kris Jenner and Jenner Communications also assert that venue should be in California. They baldly assert that "Under the terms of the Side Letter with TLK, any claims against Jenner were required to be brought in the first instance in California." Doc. 11 at 8. Jenner does not, however, cite the Court to any provision in the Side Letter that would support this. Indeed, the first two paragraphs of the Side Letter are entitled "Commissionable Sales" and "Force Majeure." Doc. 24-1

---

*v. United Mine Wkrs. of Am.*, 416 F.2d 1192, 1198 (6th Cir. 1969). "Ambiguity exists 'if the language is susceptible to two or more reasonable interpretations.... In making such a determination, a district court is counseled to read the contract as a whole, and to give the contract language its ordinary and natural meaning.'" *Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 421 (6th Cir. 2008) (quoting *United States v. Donovan*, 348 F.3d 509, 512 (6th Cir. 2003)); see also *Parrett v. Am. Ship Bldg. Co.*, 990 F.2d 854, 858 (6th Cir. 1993).

at 8. To the degree that the text of the paragraphs contained under these titles are decipherable, nothing appears to refer to a stipulation to venue.

As B&P points out, however, the Side Letter does contain a third paragraph below the signature line that follows the "Commissionable Sales" and "Force Majeure" paragraphs that states:

Inducement

> TALENT hereby accept and acknowledges each and every provision of this Agreement and agrees to be bound by the terms herein to the same extent as if TALENT had signed the Deal Memo directly as an individual.

Doc. 24-1 at 9. While no document is designated "Deal Memo," the Court, in light of the fact that Jenner had just, on the same page, signed her consent to the terms of the Side Letter, finds it would be redundant to be endorsing the same agreement again. Moreover, the TLK-B&P Agreement requires that

> The terms and conditions of this commission obligation shall be designated in a simultaneously executed side letter with this Agreement to be attached hereto as Exhibit B between Jenner Communications, Inc., and FROWNIES to by facilitated by TLK.

Doc. 1-1 ¶ 3.5. This provision in the B&P-TLK contract strengthens the conclusion that it is the "Deal Memo" to which the Side Letter Inducement provision refers. The Court thus, for the purposes of Plaintiff's prima facie showing of jurisdiction, views this as a signed agreement to the terms of the B&P-TLK Agreement.

**C.    Jurisdictional limits**

As Defendants point out in their Reply briefs, the forum selection clause in the instant case states that it is "subject to the jurisdictional limits under applicable Federal law." Doc. 1, Ex. A, ¶ 15. Indeed, forum selection clauses are not absolutely enforceable under Federal law. The Sixth

Circuit has identified three situations that limit a forum selection clause's ability to confer jurisdiction:

> (1) whe[n] the clause was obtained by fraud, duress, or other unconscionable means; (2) whe[n] the designated forum would ineffectively or unfairly handle the suit; and (3) whe[n] the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust.

*Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009); accord *Kennecorp Mtge. Brokers, Inc. v. Country Club Convalescent Hosp., Inc.*, 610 N.E.2d 987, 989 (Ohio 1993).[4] Additionally, "[t]he party opposing the forum selection clause bears the burden of showing that the clause should not be enforced." *Id.*

Defendants do not refer the Court to any unconscionable means by which it was obtained, much less reasons why this Court would ineffectively or unfairly handle the case, nor serious inconvenience. They instead assert that this last phrase invoking "jurisdictional limits under applicable Federal law" of the forum selection clause somehow subjects the question of personal jurisdiction to the state law long-arm statute and federal minimum contact analysis.

Federal courts do not require minimum contacts to obtain personal jurisdiction when it has been consented to in a forum selection clause involving Ohio. *National City Commercial Capital Co., LLC v. Caliber Homes, LLC*, 2009 WL 4043336, 3 (S.D. Ohio 2009). This is because "[t]he Supreme Court of Ohio has determined that "a minimum-contacts analysis as set forth in

---

[4] California, while applying a slightly different standard, would be even more likely to reach the same result. See *Nedlloyd Lines B.V. v. Superior Court*, 834 P.2d 1148, 1151 (Cal. 1992).

*International Shoe Co. v. Washington*, (1945), 326 U.S. 310, and its progeny, is not appropriate in determining the validity of forum selection clauses in commercial contracts." *Id.* at n.4. (citing *Kennecorp Mortgage Brokers, Inc. v. Country Club Convalescent Hospital, Inc.*, 610 N.E.2d 987, 988-99 (1993)). The same result would hold if the case were to arise in California. See *Nobel Floral, Inc. v. Pasero*, 106 Cal. App.4th 654, 658, 130 Cal. Rptr.2d 881, 885 (Cal. App. 4 Dist. 2003).

Defendants' motions to dismiss for lack of personal jurisdiction will be denied.

**III.**     ***Forum Non Conveniens***

Defendant assert that, even if the Court has personal jurisdiction, the case should be transferred to California under 28 U.S.C. § 1404.

**A.**     **Standard**

In *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988)), the Supreme Court stated that when weighing whether transfer is justified under section 1404(a), a choice of forum clause is "a significant factor that figures centrally in the District Court's calculus." *Stewart*, 487 U.S. at 29. "[W]hile other factors might 'conceivably' militate against a transfer, ... the venue mandated by a choice of forum clause rarely will be outweighed by other 1404(a) factors." *In re Ricoh*, 870 F.2d 570, 573 (11th Cir. 1989),(quoting *Stewart*, 108 S.Ct. at 2244)). Finally, "a valid forum selection clause [should be] given controlling weight in all but the most exceptional cases." *Stewart*, 487 U.S. at 33 (Kennedy, J., concurring).

Normally under 28 U.S.C. § 1404, "[t]he party moving for transfer of venue generally has the burden of proving that transfer is appropriate and the plaintiff's choice of forum is entitled to considerable weight." *Mind–Peace, Inc. v. Pharmacon Int'l, Inc.*, 2006 WL 2849811 (S.D. Ohio

Oct. 2, 2006) (citing *Nicol v. Koscinski*, 188 F.2d 537, 537 (6th Cir. 1951)). In ruling on a Section 1404(a) motion, a court need not limit itself to the statutory factors. *Clintonville Serv. Ctr. v. Monaco Coach Corp.*, 2007 WL 1024809 (S.D. Ohio March 30, 2007) (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995)). "Rather, a court should consider 'all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.'" *Id.* at 879 (citing 15 Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction and Related Matters* at § 3847 (2d ed. 1986)). While there are no set factors that the Court must examine, courts have generally examined a host of private and public factors protected by the language of Section 1404(a). See *id.* After considering the relevant factors, a transfer for convenience should not be ordered if the result is merely to shift the inconvenience from one party to another. 15 Wright & Miller, *Federal Practice & Procedure: Jurisdiction and Related Matters* at § 3848.

"The private interests have included: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Clintonville Serv. Ctr.*, 2007 WL 1024809 (internal citations omitted). See *Coast to Coast Health Care Services, Inc. v. Meyerhoffer*, 2012 WL 169963 (S.D. Ohio, January 19, 2012).

**B.     Analysis**

Defendants have failed to meet their burden of proving that the Southern District of Ohio is so inconvenient that they should not be held to the valid forum selection clause. Defendants do not contend that any of their witnesses, let alone their essential witnesses, will be unavailable if the trial is held in Ohio. Additionally, the location of the business records is a non-factor in this case, as the documents are easily duplicated in either forum.

While a trial court in California would be more familiar with California law, competent counsel should be able to assist the Court in discerning the appropriate standards. The enforcability of a judgement may be easier if it were rendered by a California court, but Defendants have not raised any concerned in this regard that would render venue in this Court unreasonable. Therefore, transfer of venue is not warranted.

**IV.    Conclusion**

Because the parties have stipulated to venue in the "home county of the non-breaching party" and because B&P Company alleges that Defendants have breached their agreement, Motion of Defendant TLK Fusion Entertainment, LLC, to Dismiss, or in the Alternative, to Transfer this Case to the Central District of California, (Doc. 10), and Motion of Kris Jenner Communications, Inc., and Kris Jenner to Dismiss Complaint for Lack of Personal Jurisdiction, Pursuant to Fed. R. Civ. P. 12(b)(6), or in the Alternative for Transfer to the Central District of California, (Doc. 12), are **DENIED**. The Court notes, however, its own concern regarding subject matter jurisdiction: the Complaint does not inform the Court of the names and states of residence of the members who comprise TLK Fusion Entertainment LLC, an essential element for determining diversity jurisdiction. The Court, therefore, **ORDERS** TLK Fusion Entertainment, LLC to declare its members and their places of residence by April 15, 2012.

**DONE** and **ORDERED** in Dayton, Ohio, Monday, March 19, 2012.

                                                                     s/Thomas M. Rose
                                                 _____
                                                      THOMAS M. ROSE
                                          UNITED STATES DISTRICT JUDGE