# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

B&P COMPANY, INC.,                              :

                      Plaintiff,

       -vs-

TLK FUSION
ENTERTAINMENT, LLC., *et al.,*

               Defendants.          :

Case No. 3:11-cv-276

District Judge Thomas M. Rose
Magistrate Judge Michael R. Merz

---

**REPORT AND RECOMMENDATIONS RECOMMENDING PLAINTIFF B&P'S
MOTION TO DISMISS COUNTS III AND IV OF JENNER DEFENDANTS' AMENDED
COUNTERCLAIM BE GRANTED;
ORDER DENYING JENNER DEFENDANTS' MOTION FOR LEAVE TO FILE A
SECOND AMENDED COUNTERCLAIM**

---

This case is before the Court on Plaintiff and Counterclaim Defendant B&P Company, Inc.'s (B&P) Motion to dismiss Counts III and IV of Jenner Defendants' Amended Counterclaim. Doc. 46. The parties have fully briefed the issues, *Id.*; Doc. 50[1]; Doc. 52, and the matter is ripe for Report and Recommendations.

Plaintiff B&P Company ("B&P") filed a complaint against Defendants TLK Fusion Entertainment, LLC ("TLK"), Jenner Communications, Inc. ("Jenner Communications")[2], Kristen Jenner a/k/a Kris Jenner ("Ms. Jenner"), and Does 1-100 alleging claims for fraud and

---

[1] The Jenner Defendants filed their Memorandum in Opposition under seal pursuant to District Judge Rose's Order granting their unopposed motion to that effect. (Doc. 49 and Notation Order).
[2] Jenner Communications is owned by Bruce Jenner and Ms. Jenner and is a production company that exists primarily for the purpose of entering into agreements on behalf of and for the benefit of Bruce Jenner and Ms. Jenner. Bruce Jenner is Ms. Jenner's spouse.

deceit, breach of contract, breach of covenant of good faith and fair dealing, and unjust enrichment, and seeking rescission of a contract pursuant to California Civil Code § 1689. Subsequently, Jenner Communications and Ms. Jenner filed an Amended Counterclaim against B&P Company. Currently before the Court is B&P's Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) Counts III (fraudulent misrepresentation) and IV (negligent misrepresentation) of the Amended Counterclaim[3].

As noted, B&P brought its Motion to Dismiss Counts III and IV of the Jenner Defendants' Amended Counterclaim pursuant to Fed.R.Civ.P. 12(b)(6) whose purpose is to allow a party to test whether, as a matter of law, the opposing party is entitled to legal relief even if everything alleged in the [counterclaim] is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993), citing *Nishiyama v. Dickson County, Tennessee*, 814 F.2d 277, 279 (6th Cir. 1987).

The Supreme Court recently raised the bar for pleading requirements beyond the old "no-set-of-facts" standard of *Conley v. Gibson,* 355 U.S. 41 (1957).

> Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004)("[T]he pleading must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact) … .
> …
>
> [W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, "'this basic deficiency should … be exposed at the point of minimum expenditure of time and money by the parties and the court.'" 5 Wright & Miller § 1216, at 223-234 (quoting *Daves v. Hawaiian Dredging Co.,* 114 F.Supp 643, 645 (D. Hawaii 1953)); see also *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 346 … (2005); *Asahi Glass Co. v. Pentech Pharmaceuticals, Inc.,* 289 F.Supp.2d 986, 995 (N.D.Ill. 2003) … .

---

[3] The Jenner Defendants have pled Counts III and IV in the alternative. PageID 687.

*Bell Atlantic Corp, v. Twombly*, 550 U.S. 544, 555, 558 (2007)(citations omitted).

In *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), the Court made it clear that *Twombly* applies in all areas of federal law and not only in the antitrust context in which it was announced. Following *Iqbal,* district courts faced with motions to dismiss must first accept as true all of the factual allegations contained in a complaint. However, this requirement "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Twombly*, 550 U.S. at 555. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 556. Determining whether a counterclaim states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Iqbal,* 556 U.S. at 678. Under *Iqbal*, a civil complaint will only survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. … Exactly how implausible is "implausible" remains to be seen, as a malleable standard will have to be worked out in practice." *Courie v. Alcoa Wheel & Forged Products,* 577 F.3d 625, 629-30 (6th Cir. 2009).

> [O]n the plausibility issue, the factual allegations in the complaint need to be sufficient "to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, *i.e.,* more than merely possible." *Fritz v. Charter Twp. Of Comstock,* 592 F.3d 718, 722 (6th Cir. 2010)(quoting *Iqbal*, 129 S.Ct. at 1949-50). Further, "a legal conclusion [may not be] couched as a factual allegation" and mere "recitations of the elements of a cause of action" are insufficient to withstand a motion to dismiss. *Id.*(quoting *Hensley Mfg. v. ProPride, Inc.,* 579 F.3d 603, 609 (6th Cir. 2009)).

*White v. Chase Bank USA, NA,* No. 3:10cv021, 2010 WL 3782399 (S.D. Ohio Sept. 28, 2010)(Rice, J.). In deciding a Rule 12(b)(6) motion, a court must construe the complaint in the

light most favorable to the plaintiff and treat all well-pleaded allegations in the complaint as true. *Twombly,* 550 U.S. at 555-56.

The Sixth Circuit recently held that to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face" and all well-pled facts in the complaint must be accepted as true. *Savoie v. Martin,* 673 F.3d 488, 492 (6th Cir. 2012)(citations omitted).

The court turns to the allegations contained in the Jenner Defendants' Amended Counterclaim which, for purposes of this Motion, the Court accepts as true.

On or about February 7, 2011, B&P entered into an agreement [with TLK Fusion Entertainment LLC ("TLK")] which was made, in part, for the benefit of Ms. Jenner ("the Agreement"). Doc. 41, PageID 681. The  Agreement provided that  B&P wished to engage the marketing and public relations services of TLK to align Ms. Jenner with its Frownies brand and designated product line known as "Beautiful Eyes in a Bag", PageID 682. The Agreement also provided that as consideration for TLK's and Ms. Jenner's performance of all obligations identified in the Agreement, B&P would pay TLK the sum of $305,000.00 as well as two percent (2%) of the net sales of the designated Frownies in excess of $4,500,000.00 for the term of the Agreement. *Id.* The Agreement provided further that Ms. Jenner would appear for a single photo shoot of not more than five hours and be available for a single promotional event in Los Angeles to last no more than five hours. *Id.* Ms. Jenner agreed to approve and license five photographs for use by B&P in promoting and advertising its Frownies products. PageID 683.

In the discussions which led to the execution of the Agreement, B&P represented that it was a legitimate company, made millions on just "Beautiful Eyes in a Bag" product, and had the financial strength and ability to qualify and participate in third party marketing programs such as

QVC television presentations and mass marketing relationships with Sears and other large retail organizations. *Id.* Such financial strength, marketing programs, and relationships were essential to achieving the 2% commission which was a key inducement for Ms. Jenner to endorse the Frownies products. *Id.* Those representations were material to the transaction in that Ms. Jenner would not have entered into the Agreement if she had known that B&P would be unable to finance the mass marketing programs, the inventory production, and the retail relationships that were essential to the generation of the commission. PageID 684.

Starting in about March 1, 2011, Ms. Jenner performed all of the acts required under the Agreement. *Id.* On or about May 12, 2011, B&P issued a press release describing a Mother's Day interview in which Ms. Jenner endorsed the Frownies' product "Beautiful Eyes in a Bag". *Id.* In or about mid-July, 2011, reports were published on the Internet claiming that Ms. Jenner had undergone a "facelift". PageID 685. Subsequently, B&P commenced this action against Ms. Jenner alleging, *inter alia,* she had breached the Agreement by undergoing a surgical facelift. *Id.*

With respect to damages, the Jenner Defendants allege that:

1. as a result of B&P's alleged breach of contract (Count I), "[Ms.] Jenner has suffered and will continue to suffer general and special damages. [Ms.] Jenner seeks compensation for all damages and losses proximately caused by the breaches and wrongful conduct of B&P in an amount to be proved at trial, as well as the recovery of [her] reasonable attorney's fees." PageID 686.

2. as a result of B&P's breach of implied covenant of good faith and fair dealing (Count II), "[Ms.] Jenner has suffered, and will continue to suffer, general and special damages. [Ms.] Jenner seeks compensation for all damages and losses proximately

caused by the breaches and wrongful conduct of B&P in an amount to be proved at trial, as well as the recovery of [her] reasonable attorney's fees." PageID 686-86.

3. as a result of B&P's fraudulent representations and her justifiable reliance on those representations (Count III), "[Ms.] Jenner has suffered and will continue to suffer, general and special damages. [Ms.] Jenner seeks compensation for all damages and losses proximately caused by her reliance on B&P's fraudulent representations in an amount to be proved at trial, as well as the recovery of [her] reasonable attorney's fees." PageID 687.

4. as a result of Ms. Jenner's reliance on B&P's negligent representations (Count IV), "[Ms.] Jenner has suffered and will continue to suffer, general and special damages. [Ms.] Jenner seeks compensation for damages and losses proximately by B&P's negligent representations in an amount to be proved at trial, as well as the recovery of [her] reasonable attorney's fees." PageID 688.

First, the Court notes that perhaps with the exception of *Textron Fin. Corp. v. Nationwide Mut. Ins. Co,* 115 Ohio App.3d 137 (9th Dist. 1996), see *infra,* the parties generally do not disagree as to the legal standards applicable to the present dispute.

In support of its Rule 12(b)(6) motion to dismiss, B&P argues that the Jenner Defendants' claims for fraudulent misrepresentation (Count III) and negligent misrepresentation (Count IV) fail for several reasons:

1. The claims "fall woefully short" of the heightened pleading standard prescribed by Fed.R.Civ.P. 9(b);

2. The claim for negligent misrepresentation fails further because it arises out of the Jenner Defendants' claim for breach of contract and Ohio courts have held

that the existence of a contract action excludes the opportunity to present the same case as a tort claim; and

3.  The Jenner Defendants were admittedly not involved in the negotiations of the agreement and as such, cannot establish liability for any comments purportedly made by B&P during those negotiations.

(Doc. 46).

In support of its first argument (the "heightened pleading" argument), B&P alleges that while state law governs the burden of proving fraud at trial in a diversity action in federal court, the procedure for pleading fraud in a diversity suit in federal court is governed by the special pleading requirements of Fed.R.Civ.P. 9(b) which requires that a party alleging fraud or mistake "must state with particularity the circumstances constituting fraud of mistake." Doc. 46, PageID 722. B&P argues that the pleading requirements of Rule 9(b) apply to claims of fraudulent misrepresentation, that whether a state law claim sounds in fraud and triggers Rule 9(b)'s heightened standard is a matter of substantive state law, and that Ohio courts have held that Rule 9(b)'s heightened pleading requirements apply to claims of negligent misrepresentation.  PageID 722-23. B&P's position is that the allegations in the Amended Counterclaim: (1) fail to allege the time, place, or content of the alleged misrepresentations but just vaguely refer to "discussions which led to the execution of the contracts" and "B&P's representations as to the fact of its financial strength and ability"; (2) fail to identify the specific source of the alleged misrepresentations but simply state that "B&P represented"; (3) fail to allege with any specificity where the alleged "discussions" or "representation" took place; and (4) fail to allege any specific content or quotation from the alleged misrepresentation. PageID 723. The thrust of B&P's

arguments is that the Jenner Defendants have failed to plead "the who, what, when, where, and how" of the alleged misrepresentation. PageID 724.

In support of its argument that the claim for negligent misrepresentation fails because it arises out of the Jenner Defendants' claim for breach of contract, B&P claims that in Ohio breach of contract does not create a tort claim and that a tort claim based upon the same actions as those upon which a claim of contract breach is based will exist independently of the contract only if the breaching party also breaches a duty owed separately from that created by the contract (that is, a duty owed even if no contract existed). PageID 724-25. B&P's position is that the Jenner Defendants have failed to plead a duty independent of the agreement and have failed to allege actual damages in addition to those attributable to the alleged breach of the agreement. PageID 725. B&P points out that the Jenner Defendants' claim for negligent misrepresentation alleges "general and special damages … [and] compensation for damages and losses proximately caused by B&P's negligent representations in an amount to be proved at trial, as well as the recovery of Jenner's reasonable attorney's fees", [Doc. 41, ¶ 40, PageID 688], and that their claim for breach of contract alleges identical damages, "general and special damages … [and] compensation for all damages and losses proximately caused by the breaches and wrongful conduct of B&P in an amount to be proved at trial, as well as the recovery of Jenner's reasonable attorney's fees." [Doc. 41, ¶29, PageID 686]. Doc. 46, PageID 725.

In support of its final argument that the Jenner Defendants cannot establish liability for any comments purportedly made by B&P during the negotiations because they were admittedly not involved in the negotiations of the agreement and as such, B&P argues that under Ohio law a person is liable for negligent misrepresentation when: (1) he supplies false information; (2) for the guidance of others in their business transactions; (3) causing pecuniary loss to plaintiff; (4)

who justifiably relies upon the information; (5) if he fails to exercise reasonable care or competence in obtaining or communicating the information. PageID 726. B&P's position is that the Jenner Defendants allege that the misrepresentation occurred "[i]n the discussion which led to the execution of the contracts", but they admit that they had no involvement in the negotiations of the agreement with B&P. *Id.* B&P argues that because the Jenner Defendants were not involved in the negotiations, B&P did not intend to supply the alleged misrepresentation to the Jenner Defendants of influence them with its alleged misstatement and that B&P could not have known that TLK intended to use this information to induce reliance from the Jenner Defendants as B&P was aware of the Jenner Defendants absence from the negotiations. *Id.*

In support of their opposition to B&P's motion, the Jenner Defendants have submitted several documents they represent they obtained during discovery. Doc. 50, Ex. A. Attached thereto and Attachments thereto, PageID 762-814. The Jenner Defendants filed their memorandum in opposition under seal on the basis these documents are subject to an agreed protective order entered on August 17, 2012. Doc. 49, PageID 740.

In opposition to B&P's motion to dismiss, the Jenner Defendants argue first that their claims for fraudulent and negligent misrepresentation were pled with sufficient particularity to satisfy Rule 9(b) and provide B&P with sufficient notice to prepare an informed response. Doc. 50, PageID 750-51. The Jenner Defendants argue in the alternative that should the Court find that the allegations lack in some respect, the Court should grant them leave to amend and file a Second Amended Counterclaim curing any alleged deficiency. PageID 749; 753; 759-60.

The Jenner Defendants' position is that the content is "undeniably clear" as "B&P represented that it was a legitimate company, made millions on just 'Beautiful Eyes in a Bag'

products, and had the financial strength and ability to qualify and participate in third party marketing programs such as QVC television presentations and mass marketing relationships with Sears and other large retail organizations. (Doc. 41, ¶ 13)." Doc. 50, PageID 751. The Jenner Defendants claim that the Amended Counterclaim is clear that the misrepresentations intending to induce Ms. Jenner to enter the contract took place during discussions which let to execution of the contract. *Id.* The Jenner Defendants' also claim that B&P had sufficient notice of the claims "through the Amended Counterclaims, the initial disclosures, the Motion for Leave to Amend, and this Memorandum in Opposition." PageID 752-53.

The Jenner Defendants argue further that B&P's financial strength was essential to Ms. Jenner earning the 2% commission and they claim that Ms. Jenner would not have entered into the contracts if she knew that B&P could not finance the inventory production and retail relationships essential to generate her commission. PageID 751. The Jenner Defendants further argue that the misrepresentations were made to induce Ms. Jenner to enter the contracts to promote "Beautiful Eyes in a Bag" products and that she was justified in relying on the representations, was given no reason to doubt them, and relied upon them in entering the contract. *Id.* As for damages, the Jenner Defendants allege they have "suffered lost profits as well as general and special damages and attorney fees" and that Ms. Jenner, in reliance on the misrepresentations and omissions, lost substantial time including the approval of photographs, participation in a satellite medial tour, and a Mother's Day interview. PageID 751-52. Finally, the Jenner Defendants argue that "the Rule 9(b) specificity threshold—for which B&P argues Rule 12(b)(6) dismissal—is not a threshold its own fraud allegations would satisfy." *Id.*

With respect to B&P's argument that the claim for negligent misrepresentation fails because it arises out of the Jenner Defendants' claim for breach of contract and is therefore

barred by Ohio law, the Jenner Defendants argue that their negligent misrepresentation claim is not based upon the same factual circumstances as their breach of contract claim. PageID 753. Essentially, the Jenner Defendants' position is that their negligent misrepresentation claim is based upon actions prior to the execution of the agreement while the breach of contract claim is based on an alleged breach of the agreement after it was executed. PageID 753-56. They claim that with respect to the negligent misrepresentation claim, B&P provided false information in the course of its business, the information was provided to Ms. Jenner, and that she justifiably relied on it, and that she suffered damages. *Id.* They distinguish the breach of contract claim by arguing that it is "based upon the existence of the B&P agreement and commission agreement, Ms. Jenner's performance of her obligations, B&P's improper rescission based on rumors published on the internet regarding face-lifts, and B&P's refusal to use Ms. Jenner's endorsement to promote its products, Ms. Jenner's willingness to continue to perform, and loss of the ability to earn her commission." PageID 755.

Finally, the Jenner Defendants address B&P's argument that the Jenner Defendants were admittedly not involved in the negotiations of the agreement and as such, cannot establish liability for any comments purportedly made by B&P during those negotiations. PageID 756. Relying heavily on documents which they attached to their memo in opposition, the Jenner Defendant's argue that TLK was B&P's agent. PageID 756. The Jenner Defendants argue further that they were supplied negligent misrepresentations by B&P through its agent TLK who conducted the negotiations for B&P and therefore B&P is liable for those negligent misrepresentations because a party can be held liable for the negligent misrepresentations of its agents. PageID 756-57.

In its reply, the first argument that B&P makes is that a Rule 12(b)(6) motion is directed solely to the counterclaim and any exhibits attached to it and the merits of the claims set forth in the complaint are not at issue on a motion to dismiss for failure to state a claim. Doc. 52, PageID 820-21. B&P notes that Rule 12(b)(6) requires that "if matters outside the pleadings are presented to and not excluded by the court," that motion shall be treated as one for summary judgment. PageID 821. B&P also notes that a court may consider attachments to a motion to dismiss as part of the pleadings if such attachments are referred to in the complaint and are a central part of the claim, and only to fill in the contours and details of the complaint and it may not base its rationale on the additional information contained in matters outside the pleading. *Id.* The essence of B&P's position is that the documents that the Jenner Defendants attached to their memo in opposition do not merely fill in the contours and details of their Amended Counterclaim but rather attempt to argue the merits of their claims and B&P's position is that the Court should not consider the documents unless converting the Rule 12(b)(6) motion to one for summary judgment.[4] *Id.*

As to their position that the Jenner Defendants' claims for fraudulent misrepresentation and negligent misrepresentation are not pled with the requisite particularity, B&P argues that the Jenner Defendants alleged in their amended counterclaim that the purported misrepresentations were made "[i]n the discussions which led to the execution of the contracts",  and they admit that the subject negotiations that ultimately ended with the executed agreement were on-going from January to February, 2011. PageID 822, citing Doc. 41, ¶ 13, Page ID 683 and Doc. 50, PageID 746-47. B&P argues that the Jenner Defendants' admission supports B&P's argument that it is therefore unable to glean from the Amended Counterclaim the date and time of the alleged

---

[4] Should the Court convert its motion to dismiss to one for summary judgment, B&P requests an opportunity to respond to the Jenner Defendants' memo in opposition as such. *Id.*

misrepresentations. Doc. 52, PageID 822. B&P also argues that for the same reasons, the Amended Counterclaim fails to identify the place and manner of the alleged misrepresentations since the Jenner Defendants simply allege that the purported misrepresentations occurred "in discussions". Doc. 52, PageID 822-23.

B&P argues next that while the Amended Counterclaim alleges that "B&P represented…" and "B&P's representations as to the facts of its financial strength and ability were made…", the Jenner Defendants now argue that the source of the misrepresentations and omissions was TLK. PageID 823. B&P notes that nowhere in the Amended Counterclaim do the Jenner Defendants claim that the purported misrepresentations were made by TLK on behalf of B&P. *Id.* B&P also argues that the Amended Counterclaim does not allege that the fraud took place on a specific date and time, or that there was an agency relationship between B&P and TLK. *Id.* B&P points out that, contrary to the Jenner Defendants' position that B&P had sufficient notice of the claims "through the Amended Counterclaims, the initial disclosures, the Motion for Leave to Amend, and this Memorandum in Opposition", the threshold test is whether the [counterclaim] placed the defendant on sufficient notice of the misrepresentation. PageID 824.

B&P argues next that the Jenner Defendants' attempt to distinguish their claim for negligent misrepresentation from their claim for breach of contract fails because both claims arise out of B&P's alleged misrepresentations regarding its financial condition and Ms. Jenner's alleged missed opportunity to earn commissions. PageID 824-25. B&P argues that the Jenner Defendants' breach of contract claim alleges that B&P decided, because of poor sales and its inability to provide the financial and other commitments to enter into third party marketing programs, to terminate the agreement thereby depriving Ms. Jenner of her opportunity to earn

commissions pursuant to the agreement. PageID 825. B&P argues further that the negligent misrepresentation claim is based on B&P's alleged misrepresentations regarding its status as a legitimate company, its profits on the Beautiful Eyes product, and its financial strength and ability to participate in third party marketing programs. *Id.* Finally, B&P points out that the Jenner Defendants have failed to allege a duty, independent of the contract, and have alleged identical damages for both claims and that their claim for negligent misrepresentation fails. PageID 825-26. Finally, B&P argues that it cannot be liable to the Jenner Defendants for negligent misrepresentation based on a theory of agency as no agency relationship is alleged in the Amended Counterclaim. PageID 826-27.

The Court will first address that branch of B&P's present motion that addresses Count III, the claim for fraudulent misrepresentation.

While state law governs the burden of proving fraud at trail in a diversity action in federal court, the procedure for pleading fraud in a diversity action in federal court is governed by the special pleading requirements of Fed.R.Civ.P. 9(b). *Minger v. Green,* 239 F.3d 793, 800 (6th Cir. 2001)(citations omitted). The heightened pleading standard of Rule 9(b) applies to claims of fraudulent misrepresentation. See *Coffey v. Fomaex L.P.,* 2 F.3d 157, 162 (6th Cir. 1993)(citation omitted). In other words, because the Jenner Defendants' claim in Count III of their Amended Complaint is based on fraud, in addition to the Rule 12(b)(6) standards, they must also meet the more rigorous pleading standards of Rule 9(b) with respect to that claim. See *Heinrich v. Waiting Angels Adoption Services, Inc.,* 668 F.3d 393, 403 (6th Cir. 2012). Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Heinrich, supra,* citing Rule 9(b); *Minger, supra,* citing Rule 9(b). In order to satisfy the pleading requirements of Rule 9(b), the Jenner Defendants, at a minimum, must

allege the time, place, and content of the alleged misrepresentation on which they relied, the fraudulent scheme, the fraudulent intent of the Defendants, and the injury resulting from the fraud. *Cataldo v. U.S. Steel Corp.,* 676 F.3d 542, 551 (6th Cir. 2012). In other words, the Jenner Defendants must plead "the who, what, when, where, and how" of the alleged fraud. *Sanderson v. HCA-The Healthcare Co.,* 447 F.3d 873, 877 (6th Cir. 2006)(citation omitted). A complaint's failure to comply with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6). *United States ex rel. Howard v. Lockheed Martin Corp.,* 499 F.Supp.2d 972, 976 (S.D Ohio 2007).

Based on its review of the Amended Counterclaim, this Court concludes that the Jenner Defendants have failed to satisfy the heightened pleading requirement of Rule 9(b). The Amended Counterclaim arguably states with specificity what the Jenner Defendants claim were the fraudulent misrepresentations: "[T]hat B&P fraudulently represented that it was a legitimate company, made millions on just 'Beautiful Eyes in a Bag' products, and had the financial strength and ability to qualify and participate in third party marketing programs such as QVC television presentations and mass marketing relationships with Sears and other large retail organizations." Doc. 41, PageID 683. Assuming that those allegations satisfy the pleading requirement of Rule 9(b), the Amended Counterclaim fails satisfy Rule 9(b) because it does not specify the "who, when, where" of the alleged fraud.

First, the Jenner Defendants fail to identify in the Amended Counterclaim who made the allegedly fraudulent representations. Additionally, while the Jenner Defendants argue in their memorandum in opposition that the sources of the representations were TLK and Ken Collis, Doc. 50, Page ID 751, the Amended Counterclaim is silent as to whom the allegedly fraudulent representations were made. Second, the Amended Counterclaim does not specify when B&P

made the allegedly fraudulent representations. The most the Amended Complaint does is to refer to "in the discussions which led to the execution of the contracts". Doc. 41, PageID 683. Indeed, in their memorandum in opposition, the Jenner Defendants acknowledge that those discussions were on-going for a period of one month from January to February, 2011. Doc. 50, PageID 746. Yet, the Amended Complaint is silent as to when, during that month-long period, the allegedly fraudulent misrepresentations were made. Moreover, the Amended Counterclaim is silent as to where or how the misrepresentations were made.

The Jenner Defendants contend that B&P has sufficient notice of the fraud claims "through the Amended Counterclaim, the initial disclosures, the Motion for Leave to Amend, and this Memorandum in Opposition". Doc. 50, PageID 752. Indeed, they have based their arguments in opposition to B&P's present motion almost entirely on facts that they have gleaned from the documents which they attached to their memorandum. However, the test is whether the *Amended Counterclaim* placed B&P on sufficient notice of the time, place, and content of the alleged misrepresentations, *Cataldo,* 676 F.3d at 551; in other words, the "who, what, when, where, and how" of the alleged fraud. *Sanderson,* 447 F.3d at 877. This Court concludes that the allegations in Count III of the Amended Complaint do not meet the heightened pleading requirements of Fed.R.Civ.P. 9(b) and B&P's Rule 12(b)(6) motion to dismiss Count III should be granted. See *Lockheed Martin*, 499 F.Supp.2d at 976.

The Court turns to Count IV of the Amended Complaint, the claim for negligent misrepresentation. First, the Court will assume that Rule 9(b)'s heightened pleading requirements apply to a claim for negligent misrepresentation. See *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.,* 683 F.3d 239, 247 (6th Cir. 2012). With that assumption in mind, for the same reasons that Count III of the Amended Complaint does not satisfy Rule 9(b), Count IV

also fails. However, even if a claim for negligent misrepresentation is not subject to Rule 9(b)'s requirement, there are additional reasons why Count IV fails.

Under Ohio law, the existence of a contract action generally excludes a cause of action based upon the same conduct sounding in tort. *Hanlin v. Ohio Builders and Remodelers, Inc.,* 196 F.Supp.2d 572, 579 (S.D. Ohio 2001)(citation omitted). "A tort claim based upon the same actions as those upon which a claim of contract breach is based will exist independently of the contract action only if the breaching party also breaches a duty owed separately from that created by the contract, that is, a duty owed even if no contract existed." *Textron,* 115 Ohio App.3d at 151 (citation omitted). Further, there must be actual damages in addition to those attributable to the breach of contract claim. *Id.* (citations omitted).

In their Amended Counterclaim, the Jenner Defendants have not pled that B&P owed them a duty independent of the contract at issue. The entire Amended Counterclaim is based on the Jenner Defendants' allegations of breach of contract. The Jenner Defendants' tort claim in Count IV is based on the same actions as their breach of contract claim. In other words, the Jenner Defendants' allegation of negligent misrepresentation arises out of the contract and it does not stand on its own. Further, a comparison of the Jenner Defendants' claim for damages for each of the four Counts in the Amended Counterclaim reveals that their claims for damages for breach of contract (Count I), breach of implied covenant of good faith and fair dealing (Count II), fraudulent misrepresentation (Count III), and negligent misrepresentation (Count IV), are virtually identical. Doc. 41, PageID 686-88. Accordingly, the Amended Counterclaim fails to allege actual damages for a claim sounding in tort in addition to those attributable to the breach of contract. *Textron,* 115 Ohio App.3d at 151.

The Jenner Defendants attempt to distinguish *Textron* on the basis it concerned an appeal alleging failure to direct a verdict after trial "not a premature attempt to dismiss appropriately states claims via Rule 12(b)(6) before a single deposition has been taken." Doc. 50, PageID 754. However, the Jenner Defendants have read *Textron* too narrowly, particularly in light of *Twombly* and *Iqbal*. Further, in the recent case of *Toledo Mack Sales & Service, Inc., v. Mack Trucks, Inc.,* 437 Fed.Appx. 381 (6th Cir. 2011), the Sixth Circuit affirmed the district court's granting of a Rule 12(b)(6) motion, and in doing so, quoted *Textron*. *Id.* at 385 ("Under Ohio law, 'the existence of a contract action … excludes the opportunity to present the same case as a tort claim. A tort claim based upon the same actions [as the contract claim] … will exist … only if the breaching party also breaches a duty owed separately from that created by the contract.'"). *Toledo Mack* directly opposes the Jenner Defendants' position.

For the foregoing reasons, this Court concludes that Count IV of the Jenner Defendants Amended Counterclaim fails and B&P's Rule 12(b)(6) motion should be granted.

The Jenner Defendants seek leave to file a second amended counterclaim in the event that the Court finds the allegations in Courts III and IV of their Amended Complaint insufficient to withstand B&P's Rule 12(b)(6) motion. Doc. 50, PageID 759-60. The extent of their "alternative motion" is, "Nonetheless, should this Court find a more definite statement is required to cure any purported ambiguity, it is requested that leave be granted to file a Second Amended Counterclaim", PageID 753, and "In the alternative, should this Court find the pleadings lacking, the Jenner Defendants respectfully request that this Court grant them leave to file a Second Amended Counterclaim including the factual matters cited herein to cure any deficiency …." PageID 759-60.

Rule 15 of the Federal Rules of Civil Procedure instructs courts to freely grant a party leave to amend its pleadings when justice so requires.

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of any allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis,* 371 U.S. 178, 182 (1962).

"A bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)." *Louisiana School Employees' Retirement System v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010)(citation omitted). A request for leave to amend "almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is … not a motion to amend." *Id.*, quoting *Begala v. PVC Bank, Ohio, Nat'l Ass'n,* 214 F.3d 776, 784 (6th Cir. 2000), *cert. denied,* 531 U.S. 1145 (2001). In the absence of a motion under Rule 15, the court, in its discretion, may deny leave to amend because defendants are "entitled to a review of the complaint as filed pursuant to Rule 12(b)(6)" and plaintiffs are "not entitled to an advisory opinion from the court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies." *Louisiana School Employees' Retirement System,* 622 F.3d at 486, quoting, *Begala,* 214 F.3d at 784.

The Jenner Defendants' alternative motion falls squarely within *Louisiana School Employees' Retirement System* and *Begala.* They have requested leave to amend "almost as an aside … in a memorandum in opposition …" to B&P's Rule 12(b)(6) motion to dismiss Counts

III and IV of the Amended Counterclaim. Other than alleging that they would include in a second amended counterclaim the factual matters that they cited in their memorandum in opposition, the Jenner Defendants do not provide any particular grounds on which they seek to amend. Indeed, they have not provided any proposed second amended counterclaim.

As an aside, the Court notes that Judge Rose entered the Preliminary Pretrial Conference Order in this matter on July 24, 2012, in which he set October 12, 2012, as the cut-off date to amend the pleadings. Doc. 36, PageID 638. The Jenner Defendants filed their Motion for Leave to  Amend Counterclaim on that date and attached to the Motion their proposed amended counterclaim. *Id.*, Ex. A thereto.  In support of that Motion, the Jenner Defendants stated that, "[o]n August 17, 2012, the parties exchanged initial disclosures in discovery" and that as a result they had learned of the facts which allegedly provided the basis for Counts III and IV in the Amended Counterclaim. Doc. 39, PageID 653. The Court granted the motion on amend on October 22, 2012, Doc. 36, Notation Order thereon, and the Amended Counterclaim was filed on that date. Doc. 41.

The Jenner Defendants' acknowledge that they have had in their possession since at least August 17, 2012, the documents which apparently provided the bases for the claims contained in Counts III and IV of the Amended Counterclaim.  They have amended their counterclaim once within the time allowed by Judge Rose in his Preliminary Pretrial Conference Order . The deadline for amending pleadings has passed and the Jenner Defendants have not shown any cause let alone good cause for failure to seek leave earlier. See *Leary v. Daeschner,* 349 F.3d 888, 909 (6th Cir. 2003), citing *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998)("Once the scheduling order's deadline [for amending pleadings] passes, a plaintiff first

must show good cause under Rule 16(b) for failure to earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)").

For the foregoing reasons, the Jenner Defendant's Alternative Motion is denied.

It is therefore recommended that Plaintiff B&P's Motion to Dismiss Counts III and IV of Jenner Defendants' Amended Counterclaim, (Doc. 46), be granted.

It is ordered that the Jenner Defendants' Motion for Leave to File a Second Amended Counterclaim, (Doc. 50), is denied.


February 26, 2013.                                  *s/ Michael R. Merz*
                                        United States Magistrate Judge


## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).